The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a line and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Good morning. Welcome to the Fourth Circuit Court of Appeals. We have two cases this morning and we will start with the case of Simply Wireless versus T-Mobile. We'll hear from the appellants. Good morning, Your Honors. Sean Roach on behalf of the appellant, Simply Wireless. May it please the Court. Your Honors, no matter how well or how poorly I may do in presenting my client's position today, the one takeaway from my perspective from this hearing should be that there is no contract or agreement in which Simply Wireless agreed to arbitrate disputes with T-Mobile over T-Mobile's trademark infringement or trademark dilution of Simply Wireless trademarks. That document simply does not exist. Now, any decent lawyer advising me or advising someone in this position would recommend or say to me that I'm fighting an uphill battle. I'm fighting against arbitration. Arbitration is a process which has gained a certain presumption over the years. Who makes the determination? Who arbitrates it? Who determines the arbitration? Who makes that determination? In this situation, Your Honor, the Court does. It's included within the contract that they are relying upon for the arbitration. It states in that contract that the parties agreed to the FAA rules. 9 U.S.C. Section 4 says the Court decides arbitrability, which makes perfect sense as well. Who determines scope? I'm sorry, Your Honor. Who determines scope? If it's determined to be arbitrable, I think then the arbitrator determines scope. But doesn't the contract also agree that the JAMS rules will apply? And don't those rules leave arbitrability to the arbitrator? It does say that, Your Honor. But those rules also say that if they are in conflict with a statute, then the statute will apply. I don't see the conflict because the FAA basically has an exception. If it's clear and unmistakable that the parties intended to leave arbitrability to the arbitrator, that's fine with the FAA. And, Your Honor, in this case, I think it is clear and unmistakable that they left that issue to the FAA or to the Court. How can that be if they incorporated JAMS rules that say the other, that are to the contrary? Let me ask you, my understanding is that there is quite uniform case law out there. We haven't addressed it yet. But that the Courts are pretty much in agreement that the contract incorporates by reference the JAMS rules. That means that it's up to the arbitrator to decide arbitrability. And, Your Honor, let me actually refer then to the contract on that issue, if I may. What issue are you talking about? The arbitrability. The issue of whether it refers to the JAMS rules. Well, it refers to the FAA, Your Honor, and I'm now looking at... So, the section that relates to the FAA is section 19.1 of the contract. It is within the joint appendix, Your Honors. We got it. What about it? It concludes, actually, by answering this exact question. Let me just refer to the exact clause here, if I can. Court's indulgence, one moment. 19.1, 19.1.1, actually, of the contract, it's joint appendix, page 514. It ends that paragraph by reading, Notwithstanding any choice of law provision in this agreement, the parties agree that the Federal Arbitration Act, 9 U.S.C., sections 1 through 15, not state law, shall govern the arbitrability of all disputes under this agreement. It specifically says... When you look at the text, I feel like that makes it worse, because it seems pretty clear that this is about the choice between federal and state law, and it's not even speaking to the issue of who decides arbitrability. Whereas, right above it, it says that the arbitration will be administered pursuant to the JAMS comprehensive rules and procedures. And I think that's a good point, Your Honor. It says administered, so it has to get past a threshold issue as to arbitrability. What the parties have said here is that arbitrability is determined under the FAA. Can I say that all this case law, that is the thing that's troubling me, do you want us just to say all those cases are wrong, or do you have a way of distinguishing them? There are cases, Your Honor... And, Your Honor, the issue in those cases, I think, is those are cases where the parties expressly said that under the JAMS rules, the arbitrator will decide arbitrability. So basically, if there's any doubt, it goes to the arbitrator. He decides whether it's arbitrable or not. In this case, what the parties said is arbitrability is decided under the FAA. The FAA says the court shall hear the parties. The court shall make an order. The court shall proceed summarily to the trial thereof. But it is well established, right, that it is consistent with the FAA for the parties to contract around that and to... I mean, you're not saying... It is well established that under the FAA, there's no FAA violation. It's entirely consistent with the FAA for parties to contract around that default rule and choose instead to allow the arbitrator to decide arbitrability, right? I agree with that, Your Honor. But I think the difference would be is in the contract that Your Honor is talking about, I would say something along the lines of parties agree that the arbitrability of this dispute will be resolved by an arbitrator. That is not what is going on in all of these other cases. In all of the other cases, what they do is incorporate by reference some other set of rules, jams, some other organization that then, in turn, allows the arbitrator to decide arbitrability. So you just think those cases are wrong, which is a perfectly fine position for you to be taking. I think they're wrong, and I also say what I disagree a little bit, that this case is different because I think what this case does is... Logically, there has to be a threshold analysis as to whether a case gets into arbitration. Otherwise, what ends up happening is every contract ends up in arbitration, whether it's subject to arbitration or not. Why not look at it this way? This dispute is one arising out of competition between two parties and has nothing to do with the marketing and distribution. I think that's absolutely right. The dispute that we're here for today has absolutely nothing to do with the contract that we are analyzing. There's a very good chance that after today, this contract will never be referred to in this case again. This dispute has nothing to do with marketing or distribution on the sale of products on HSN or QVC. It has nothing to do with TV sales. It's a trademark infringement and trademark dilution claim related to the brick-and-mortar stores of T-Mobile. They are selling products under the name of Simply Wireless. We own that market. They are doing that in their brick-and-mortar stores. It has nothing to do with this contract. And you've owned that since 2002? Correct, Your Honor. The contract in this case? The contract in this case was signed in 2012, 10 years later. There was a relationship of these parties throughout that entire period, 2002 up through 2012. So this is not a contract that sort of originated or was the result of this relationship being born.  This contract does not need to be reviewed to resolve the dispute in front of this court. The district court does not need to be referenced. It was referenced in our original complaint by mistake. Let me go to the issue that Judge Harris is discussing. That is, you are saying essentially this does not arise out of the contract. Okay, take that as a given. But nonetheless, you have agreed to this GM Rule 11B that says jurisdiction and arbitrability disputes, including disputes over the scope of an agreement, come under the arbitrator. So the question, even if it does not arise under the contract, the question is who determines scope and who determines arbitrability. And if you've agreed to go under Jams, the Jam says the arbitrator does. The arbitrator makes that determination. Then we come back to the question that the arbitrator says no, it's not an arbitration agreement. Then it comes back to the court. So I want to make sure we're clear. At least that's the way I see it. There are two issues here. You might prevail on the arising out of the contract, but you've still got a problem with the adherence to the Jam Rule 11B that says the arbitrator makes that determination. Your Honor, I'd have two points on that. One, in order for an arbitration clause to get to arbitration, it has to have a significant relationship to that dispute. This is a case law from this court. Basically, that contract has to have a significant relationship to the dispute. In other words, it needs to be within the scope of the agreement. It does, Your Honor. And I think also that's what I just said. You've agreed to the Jams. He who determines the scope of the agreement is the arbitrator. We're not disagreeing. I'm just going with the proposition that I'm accepting what you're saying is true. But you've agreed that the one to determine that question is the arbitrator. Your Honor, perhaps I should clarify my response in earlier. What I meant, though, is once the threshold question of being subject to arbitration is resolved, then it goes to the arbitrator to decide what exactly his scope is within that framework. Why wouldn't you have the first question being who determines whether this is arbitrable? Because, Your Honor, the danger in that is then every contract becomes subject to arbitration. There is then no analysis whatsoever. Everyone you've agreed with on the Jams rule will. Just take that out. Your Honor, if that's the case, then there's no analysis as to what the intent of these parties were. If it says, basically, the parties agreed to the rules of Jams under their arbitration, but there's then no analysis as to or no threshold analysis as to whether. There is, but you've got to tell the arbitrator what it is. But then every possible claim, though, in which a party says that this contract may apply, then it has to go to the arbitrator. Your problem is you think the arbitrator is always going to see it as arbitrable. But, Your Honor, let's say that there was a personal injury claim related between these two entities and has nothing to do with trademarks, nothing to do with the contract, nothing to do with distribution or product sale on HSN or QVC. And T-Mobile says, we have a contract that has arbitration. It says that the arbitrator decides arbitration. So we need to all now go out to Seattle to resolve whether that case is arbitrable or not. And if you don't like it, get it out of the contract. I mean, it's one thing if an individual consumer or someone like that comes in and says, look, I didn't really understand the import of agreeing to the JAMS rules. But you guys have lots of lawyers and everything. If you don't want to have that frivolous arbitrability dispute in front of an arbitrator, then write a different contract. You're acting as though the contract is set in stone. And so, therefore, whatever we decide about what this contract means will now henceforth govern all contracts. But that's not right. People can write contracts. I agree with that, Your Honor. And I agree parties are bound by their contract. And if Your Honors find that these parties agree that every dispute between these parties would have to go through an arbitrator to decide whether it's subject to arbitrability, then that's where we'll have to go. Why doesn't Housen versus Dean Witter help you out in that situation? I believe. Is that the case? I think that's the case. It talks about the significant relationship. No. It talks about disagreement whether an arbitration clause is in a conceitedly binding contract that applies to a particular type of controversy is for the courts. Well, so that's actually the cases that we cited, and I think those are the cases that I'm depending upon and relying upon, where there is, I think, a threshold analysis as to whether it even gets to the arbitrator. Otherwise, what we're doing is we're sending everything off to arbitrators. Did that case have a jams agreement where they agreed on the jams? I don't recall off the top of my head, Your Honor, if it did or not. You've got six, maybe seven or eight circuits that disagree with you. But I think those cases are on. Maybe one that agrees with you. Your Honor, I would. We haven't even discussed it. And we only persuade it now. So we could go against all the other circuits out there. So I won't give you that, but I'm just letting you know you've got a lot of circuits going against you. Your Honor, but I also, I've read those cases and I disagree with them. I think our case is different. I don't think that our agreement is as clear in those other cases, saying that we agreed to send everything off to arbitrability. It goes to jams. I think that in this case what we agreed to was arbitrability would be resolved by the FAA. That's what the agreement specifically says. Now, I understand that, Judge Harris, you've noted that that maybe has more to do with state law versus federal law and not necessarily an analysis of arbitrability. But I think arbitrability, the exact word is used in that sentence. The party said that arbitrability would be decided by the FAA. I think that's where this case is distinguishable from those others. I think that would be a really good argument if the FAA prohibited parties from contracting around that default rule. But it is consistent with the FAA for the parties to write a contract that says we decide to go under the jams rules, which allow the arbitrator to decide arbitrability. That is being governed according to the FAA. I just don't see the conflict that you're seeing. Well, here you have the intent of the parties, though, saying that they want arbitrability decided under the FAA. And Section 4 of the FAA says, it starts off with the provision, the court shall hear the parties upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue. The court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The parties here intended for arbitrability decided by the court. They incorporated the FAA rules. I think that's where this case is distinguishable from those others. Because here they even use the exact word, arbitrability. We're talking about arbitrability. They use the exact word saying we want arbitrability to be decided by the court. They reference the actual statute. They say in the contract they actually refer to the whole Sections 1 through 15, but that includes Section 4. It says that it's decided by the court. They wanted the court to decide this. And with all due respect to Judge Hilden, we disagree with the judge's ruling. We think there is no contract that applies here. We think there's no need to refer to this contract. The appellees refer to the contract repeatedly. They refer to the original complaint which was amended. That is a nullity. It should not even be referred to. They refer to a website within this contract. The website is on page 459 of the joint appendix. That website is not the website that's noted in the contract. If you look on the lower right-hand corner, it has a totally different URL. It doesn't actually refer to Simply Prepaid within that page. It refers to Simply Prepaid's plans. As your honors are well aware, adding words to a trademark makes it a totally different trademark. Simply Prepaid's plans is not why we're here today. Thank you, Mr. Roach. You've well presented your case. We'll let you come back for rebuttal for a little bit. Thank you, Judge. We'll hear from the other side. Morning, your honors. Joseph Lipner of Irel and Manila for Appellee T-Mobile. May it please the court. And with me at council table is my law partner, Ellison Turner, and my co-counsel, Charles Molzer. Your honors, I'd like to address the two issues that were discussed with my friend this morning. First of all, the question of who decides arbitrability that Judge Wynn and Judge Harris were asking about, and also the issue of on the merits that this the questions that Judge Floyd raised, because absolutely on the merits, this case arises out of and relates to the parties agreeing. Let's make sure we can determine at least how we can proceed here on that. Even if we were to say this does not arise out of the contract, does it not still present a situation where we've got to say look at this Rule 11B and say that's what they're arbitrating? Yeah. So I think the way it would work, your honor, under the rule of who decides arbitrability, is that the court doesn't have to reach the substantive question of whether it arises out of or relates to the contract if the court determines, as we think the law is clear, that arbitrability is determined by the arbitral tribunal and not by the courts under the JAMS rule. It's not just that we wouldn't have to reach it. We wouldn't be able to reach it, right? You present this as an alternative argument for affirmance, but I think if we were to agree with you, we would actually be vacating the district court decision, right? If we wouldn't affirm it, we would say you decided a question you weren't supposed to decide. Well, your honor, the technical decision by the court, by Judge Hilton, was to dismiss without prejudice in favor of arbitration. That still would be the appropriate remedy under these arbitrability rules. If you look, for example, at the Innospec case, that's exactly what the court did when it decided that the arbitrators were supposed to decide arbitrability. But they did so on the basis of their arising out of. That's true. They did not do it on the basis of what we are talking about. That's true. So if we vacate that, we can remand for a different reason. You could remand for a different reason. That would be the only way it's going to happen, because if we just affirm that, then we would have to go with the arising out of. You could remand for a different reason, but it would lead to the same result, which is dismissal of the case in favor of arbitration to determine arbitrability. But we would not give a pronouncement in terms of arising out of. That's correct. And I think I agree with what Judge Harris says, which is that conceptually, if all these cases are correct, which we think that they are, it means all these cases are the ones that talk about the circuit case. Correct. So perhaps I could step back a moment. There are all of these cases that Judge Wynn and Judge Harris referred to this morning from many circuits that say that it is clear and unmistakable that the parties agree to let the arbitrators decide arbitrability if they incorporate rules like the jams rules, which give arbitrability to the arbitrators. And then all those cases deal with the situation where Mr. Roach points out that at the end of this arbitration agreement, it says notwithstanding the choice of law, the parties agree that the Federal Arbitration Act, the state law should govern arbitrability. So I don't recall that specific line in any of the cases. I'm not sure that it was absent, but I don't recall that specific line. However, that doesn't help Simply Wireless at all for the reasons that Judge Harris pointed out. All of these cases are very clear that the FAA absolutely allows enforcement by courts of this rule to allow the arbitrators to determine arbitrability. There's actually a specific United States Supreme Court case on that very point. It's Rent-A-Center West v. Jackson at 561 U.S. 63-69-70. The United States Supreme Court said, we have recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce. And the FAA operates on this additional arbitration agreement just as it does on any other. So the Supreme Court says that the enforcement of the FAA includes enforcing these kinds of provisions which give arbitrability to the arbitrator. And I do think, Your Honor, that all of the other courts that have considered this issue have adopted that rule. That includes the Second Circuit in Emilio v. Sprint, which we called out. I mention that in particular because, as Judge Floyd said in his opinion in the Chorley case, this court often looks to Second Circuit law on issues of arbitration, given their expertise in arbitration law. But every circuit, the Ninth Circuit, the Federal Circuit, the Eleventh Circuit, the First Circuit, five district courts in this circuit in the last five years have reached this conclusion. I think it's straightforward. It seems that these were not companies, big companies, bargaining with each other. You're dealing with just a consumer-type situation. Just incorporating the jams rule is just something who would know that's in the jams rule? I guess you should know if you want to incorporate it in there. But, you know, you've got this specific provision in the jams rule that says, oh, you're going to do this arbitration. But you don't have it in the actual agreement. You just incorporate those rules. And you would think that, you know, maybe in a consumer context, you'd have to be a little bit more explicit. But I suppose because these are sophisticated companies, they probably ought to read those rules. They probably ought to read those rules. And I believe that the law in the circuit is that people enter into these agreements understanding the rules relating to arbitrability. In this case, the parties do have lawyers. And I do agree with Your Honor that ruling in this manner, in this case, would leave open for another case that involves unsophisticated consumers what the exact results are. In the Aram's case, there's a written agreement to cooperate. And then there's an implied agreement that you'll continue to be competitive. And so why doesn't the Wachovia case run against you? Well, first of all, Your Honor, the agreement itself. Let me add one more factor. Clearly, there was an arbitration clause in the cooperation. But there's nothing in this implied agreement that we're going to continue to be competitive. Well, they're all the same agreement, Your Honor, I believe. The agreement that starts on page 502, I think, of the appendix, is the agreement that governs all aspects of the parties' relationship. It says they are going to cooperate in connection with these two distribution channels and we're going to allow Simply Wireless to sell our products, use our marks in that context. But it also says in that very same agreement that Simply Wireless cannot compete in other channels, that we are going to continue to compete in those other channels, and that we have certain rights once the agreement ends. So I think that this is not at all like the Wachovia case. The Wachovia case, which, as best as I can tell, was the only case of this Court that didn't take the presumption in favor of arbitration in favor of arbitration, was a case where there were two agreements between the parties. An advisory agreement and a promissory note. The entire claim was based on the advisory contract, which did not have any arbitration clause, whereas the promissory note, which did have an arbitration clause, had nothing to do with it. And the Court actually mentioned in Wachovia that the claims by the plaintiff had actually already matured before the parties entered into the promissory note. It was really about the advice that they got under the advisory. Let's go back to my example. In the cooperation agreement, you got arbitration. I'll take your word that the competition is in that agreement. But where is the right for them to control their law? Where is that in that agreement? So there are two things that make this arise out of and relate to the agreement. I'll answer Your Honor's question first, but there's something else entirely that also makes it arise out of and relate to the agreement. Where it is in this agreement is that the agreement is not only about competition and about cooperation, but it is significantly about the parties' trademark rights. There is a recital. One of the recitals, Recital C, is about the use of trademarks. Section 15 acknowledges that Simply Wireless is getting substantial goodwill from the use of T-Mobile's trademarks. Section 21.1.11 says that all of the provisions of the agreement are important to maintain T-Mobile's goodwill. All those provisions relate totally to T-Mobile's marks. Yes, Your Honor, but you could tell from Simply Wireless's own complaint. My friend got up and said, we own this mark. But you can tell from Simply Wireless's complaint that T-Mobile is proceeding on the basis that it owns this mark. It is proceeding under its own right. You can tell that from the complaint because Simply Wireless alleges that we filed for a trademark in the Patent and Trademark Office on this right. So this case has to do not with just an assertion that has to be accepted by Simply Wireless that it's their mark. This has to do with T-Mobile's substantial rights in connection with its own marks. And, Your Honor, the agreement, we haven't even talked about Section 18 of the agreement, which is on page 513, which gives rights to T-Mobile which are different than the rights of a defendant in a run-of-the-mill trademark case. So, for example, Section 18.2 says that any action that in T-Mobile's sole discretion constitutes an infringement is a breach of the agreement. Section 18.3 says that Simply Wireless agrees to comply with the marks rule page of T-Mobile. And T-Mobile has put this mark on its marks rule page. Section 18.3 says that T-Mobile has a right to require Simply Wireless to discontinue uses that T-Mobile deems to be confusingly similar to its own uses. And just to give a very meat and potatoes example of how this case relates to those claims, Your Honor, how this case relates to those provisions, it's important to note that Simply Wireless has alleged that we started using the mark in July of 2014 and that we filed for the mark in August of 2014. And then in October of 2014, Simply Wireless and T-Mobile signed an amended version of this agreement. You can see that on page 502 of the appendix in the footer. It says the date. And so after we started using this mark, Simply Wireless re-upped on a contract that said, we acknowledge that you own all of the marks. We agree not to make any claims on your marks. So we will certainly argue that those facts, based on the agreement, is very significant to determination of their claim. Finally, Your Honor, there is a whole other reason that this dispute arises and relates to the agreement. And I recognize that this is an issue that Your Honors may not reach. I do want to be responsive to Judge Floyd's concerns. But there's a whole other reason, Your Honor, that this arises out of and relates to the party's agreement. And that is because the allegations in the complaint, based on willfulness, the allegations that underlie the willfulness claim by Simply Wireless, are all about the party's conduct under the agreement. So if not for the party's relationship under the agreement, Simply Wireless would have no willfulness claim in this trademark action. Willfulness is a big deal in a trademark action. What if you didn't have this agreement? This dispute would still arise. But it would be a different dispute. There would be no willfulness claim. And willfulness is an important factor in determining likelihood of confusion in a trademark case. It's an important factor in determining whether you get disgorgement of profits. And if there was no such contract and no such relationship, Simply Wireless would not have such a claim. And Simply Wireless explicitly alleged the party's conduct under this agreement and under the previous 2003 to 2009 agreement, which also has a broad arbitration clause as the basis for the willfulness claim. They alleged that the funding provided by T-Mobile to Simply Wireless in connection with that contract for marks at issue in the case were established T-Mobile's intent, bad intent, to take those marks. We, of course, disagree. We think T-Mobile was simply proceeding under the contract in accordance with its rights. It alleged specifically that there were meetings, dozens of meetings, under the contract in which we became familiar with T-Mobile with Simply Wireless's trademark rights. If not for the conduct under the agreement, we would not have any willfulness case. I'm not aware of any case anywhere, Your Honor, this circuit or elsewhere, where conduct under the contract forms a basis for the plaintiff's claim. That contract has an arbitration clause. From everything that I've seen, those cases are always sent to arbitration and do not remain in the court. I'll give one example, Your Honor, from this circuit. There's the case American Recovery Corp., 96F3rd88. In that case, this court ruled that a quantum Merowith claim was subject to arbitration under the contract, even though quantum Merowith by definition is not a contract claim. You don't have to interpret the claims, the words in the contract, to send it to arbitration. But in that case, the plaintiff was claiming that the party's course of conduct under the contract gave rise to his expectation of payment. And those facts were enough to have this court send that case to arbitration. So because of the basis of the plaintiff's willfulness claim, which is in both the original and the amended complaint, and because of the substantial trademark rights that T-Mobile has under this agreement, there's no way to litigate this dispute without litigating those substantial trademark rights that T-Mobile has. For those reasons, Judge Hilton was correct on the merits in saying that the case had to be arbitrated. Now, coming around full circle, the court might not reach any of these issues. They may have to be re-argued to the arbitrator under the rule that the arbitrator decides arbitrability. I would like to help answer Judge Floyd's question about the House v. Dean Witter Reynolds case, but I don't recall the precise facts of that case. But I note that that case in Simply Wireless's brief simply says, a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide that the 2002 U.S. Supreme Court case. It sounds to me, admittedly without remembering the details of that case, that that's simply saying that the default is for the court to decide it. That's correct, unless the parties have made an agreement like the agreement here, which incorporates the JAMS rules. There's no dispute that the JAMS rule 11b gives the question of arbitrability to the arbitrators. So for that reason, I believe the arbitrators do have to decide arbitrability. Oh, the one other point I didn't make in response to one of Judge Harris's earlier questions where he said the court would not be able to reach the arbitration provision. I do want to point out that one case, the Ninth Circuit case that we cite, which is Wynn Resorts, not Your Honor, but Wynn Resorts, actually did do both. It said the arbitrator decides arbitrability, and as the law is developing, we are saying in any event, these claims are arbitrable. Of course, the court could do that, but I understand what Your Honor is saying. Conceptually, if you enforce this provision, then it gives that question to the arbitrators and not to the court. I see my time is up in five seconds. I want to see if there are any other questions from Your Honors. Thank you, Mr. Lippert. Thank you. Roach, you have a few minutes if you'd like to exercise that. Thank you, Your Honor. In Your Honor, it seems that the court is focusing mainly on the arbitrability issue, and it seems then that isn't there then a question as to intent, as to what these parties intend? What Section 9 U.S.C. 4 says is that the court shall summarily decide an issue by trial. If there is an issue here as to intent, as to what these parties intended in this contract, and I think it needs to summarily go to trial, there needs to be then a factual evidence you're hearing as to what these parties intended. It seems to be a clear difference of opinion perhaps all around here because the contract says arbitrability is decided under the FAA. It does include that the arbitration, once it begins, is to be administered by the JAMS rules. So you have a provision that says the FAA decides arbitrability. The FAA says the court decides arbitrability. The JAMS rules then say once it's administered, it's administered per the JAMS rules. The JAMS rules say the arbitrator decides arbitrability. The JAMS rules in Section 4 of the JAMS rules say if there's a conflict between the JAMS rules and the statute, the statute presides. So you have the parties incorporating the JAMS rules saying that if there's a conflict, we look to the statute, not to the JAMS rules. Here the statute says the court decides arbitrability. I think that is the difference between the cases that have been cited by my colleagues in their briefs and this case. You have the parties clearly intending to put the FAA first, saying that's going to decide arbitrability. Look to Section 4 of that FAA. That says the court decides. That's where I think the resolution here is. If there is a dispute as to what the parties intended, I think what the FAA also says is that then there needs to be a summary trial based on evidentiary hearing as to what those parties intended. And I think I would just like to highlight that when it comes to arbitration, the intent of the parties is important because you don't get into arbitration unless the parties intended to go there. It is a different form than the court system. It does not provide – it has benefits to it. It has downsides as well. It does not allow for a jury trial. Simply Wireless has clearly asked repeatedly for a jury trial in this case. They will be denied that right if they are forced to go to arbitration. You also have a scenario where if every question under this contract, personal injury cases, whatever it may be, they raise the fact that there's an arbitration clause, it has to then go to the arbitrator. You then get into a scenario where you have ridiculous claims that are going before the arbitrator, and the arbitrator, I'm sure we would have bet him and he would be perfectly qualified, I would hope, but he's motivated to keep that case as well. He's being paid for his time. Your honors are not paid. I suppose they're being paid by the taxpayers, but we're not paying your honors for your time here. You are impartial. You are inherently impartial. That's part of the benefit of the court system. That's part of the benefit of the jury system. It's a better system than arbitration in many respects. There are, again, benefits to arbitration. There are downsides. I would ask that – I think that the cases can be distinguished here. I think at a minimum there needs to be a factual analysis of what these parties intended. Did they intend for the arbitration or the FAA to trump the jams rules? It seems based on the wording of the contract, it's clear in my opinion that it does. I think at a minimum there needs to be a factual analysis as to that. My colleague also referenced the Marks Rules page. I don't mean to totally jump pages here, jump topics, but my colleague mentioned the Marks Rules page. Again, that's Joint Appendix 459 and 460. The URL on the bottom of that page is not the URL in the contract. If you look at the actual substance of what they attached, it does not include a simply prepaid. It refers to simply prepaid plans. Totally different word, totally different trademark. It's not incorporated into that contract. The contract that we're talking about, again, has nothing to do with a trademark dilution and trademark infringement claim of the Simply Wireless trademarks. Simply Wireless never intended to send that claim to arbitration. They want a jury trial on that claim. They want to go before an impartial court on that claim. I would ask that your honors reverse the trial court respectfully, remand the case for further proceedings on the merits. Thank you, Judge. Thank you, Mr. Brooks. Thank you, Mr. Lipman. The court will come down and greet counsel and proceed to the next case.
judges: James A. Wynn, Jr., Henry F. Floyd, Pamela A. Harris